COLONIAL FINANCE CO., INC.
*vs.*
EMILE DeBENIGNO

Court of Common Pleas   New Haven County   File No. 28343

MEMORANDUM FILED JANUARY 24, 1939.

*Bertrand B. Salzman,* of New Haven, for the Plaintiff.

*Shannon & Wilder,* of Bridgeport, for the Defendant.

DEVLIN, J.   This is a replevin action in which the plain-tiff seeks to recover the possession of an automobile delivered to the Bethel Motor Sales, Inc., on February 7, 1938, under an agreement of "Trust Receipt" in accordance with section 767d of the Supplement to the General Statutes (1937).   On Feb-ruary 17, 1938, the automobile was delivered to the defendant and the plaintiff contends this was contrary to the terms of the trust receipt and that the defendant knew or ought to have known of the existence of the trust receipt and that it was in the possession of the Bethel Motor Sales, Inc., subject to its terms and conditions.

The defendant has filed a general denial and claims to come under subdivision 2 of subsection I, relating to a buyer in the ordinary course of trade, the pertinent portions of which read as follows:

(a)   Sales by trustee in the ordinary course of trade.

(i)   When the trustee, under the trust receipt transaction, shall have liberty of sale and shall sell to a buyer in the ordin-ary course of trade, whether before or after the expiration of the thirty-day period specified in subdivision 1 of subsec-tion H, and whether or not filing shall have taken place, such buyer shall take free of the entruster's security interest in the goods so sold, and no filing shall constitute notice of the entruster's security interest to such a buyer.

(ii)   No limitation placed by the entruster on the liberty of sale granted to the trustee shall affect a buyer in the ordin-ary course of trade, unless the limitation shall be actually known to the latter.

(c)   Liberty of sale.   If the entruster shall consent to the placing of goods subject to a trust receipt transaction in the trustee's stock in trade or in his sales or exhibition rooms, or shall allow such goods to be so placed or kept, such consent or allowance shall have the same effect as granting the trustee liberty of sale.

The first requirement under the statutes is that the trustee have "liberty of sale."   Under the receipt offered in evidence the trustee is given the liberty to exhibit but the liberty to sell is conditional upon "the written consent of Colonial having

first been obtained. . . ." The question that then arises is as to the effect of this limitation upon a purchaser, and it is covered by subdivision 2 of this subsection in paragraph (a) (ii) thereof, wherein it is stated that it shall be of no effect upon a buyer in the ordinary course of trade "unless the limitation be actually known to the latter."

There is no evidence of actual knowledge upon the part of the defendant.

However, it is further provided by paragraph (c) that where the entruster consents to or allows the goods in question to be placed in the trustee's stock in trade or in his sales or exhibition rooms, "such consent or allowance shall have the same effect as granting the trustee liberty of sale."

There is evidence that the car in question was on the premises of the Bethel Motors from the night of February 14th until the morning of the 17th, when it was taken out by the defendant, and in view of this I find that the trustee had liberty of sale within the meaning of the statute.

That there was a change in ownership as between the Bethel Motors and defendant there can be no doubt in view of defendant's exhibits four and five. *Sterling Tire Corp. vs. Beers,.* 100 Conn. 45.

As to whether or not the defendant was a buyer in the ordinary course of trade, the plaintiff contends he was neither purchaser nor buyer because the term "ordinary course of trade" does not mean a transaction between a distributor and one of its agents or sub-dealers, but is intended to cover those transactions between a dealer in certain chattels and the ultimate consumer or user thereof, particularly in the sale of automobiles where a sub-dealer is an interested party and could connive with the distributor in defrauding those advancing funds and thus defeat the purpose for which the statute was created. It is further claimed that he is not a purchaser because the car was obtained as the result of an exchange or as a settlement of a claim which he had against the Bethel Motors.

"Buyer in the ordinary course of trade" is defined in subsection A of section 767d to be "a person to whom goods are sold and delivered for new value and who acts in good faith and without actual knowledge of any limitation on the trustee's liberty of sale, including one who takes by conditional sale or under a pre-existing mercantile contract with the trustee to·

buy the goods delivered, or like goods, for cash or on credit." This is followed by the limitation that the term shall not include a pledgee, a mortgagee, a lienor or a transferee in bulk.

According to the construction placed on the act by the plaintiff, the only transactions covered would be those in the retail trade. This is too narrow a view, especially when read in connection with the trust receipt statute of 1935 (Cum. Supp. [1935] §1574c), which the present act repeals. In that act the protection afforded was specifically limited to those purchasing at retail sale, but no such limitation appears in the present law.

As to whether or not the sale was for new value, the plaintiff claims that an antecedent debt is not within the meaning and that the only value given was $182.36, which was not a full and fair price for a car worth over $1,000.

For a discussion of this angle it is necessary to refer to the evidential facts, and it appears that the defendant had purchased an automobile from the Bethel Motors, Inc., on October 9, 1936, for which he was charged the wholesale price of $929.01. At the time there was owing to him on commissions the sum of $63.61, and he purchased additional accessories in the amount of $2.85, so that he paid by check (exhibit 2), $868.25. This car apparently had some defects and it was returned to the Bethel Motors in January, 1937, where it stayed until they sold it for the defendant in October, 1937. Defendant was allowed the full price on the car but received no money, it being understood that the balance would be applied toward a new car which he ordered.

At the time of the sale of defendant's car and the ordering of a new one in November, there was incurred at that time a new obligation; an obligation on the part of the Bethel Motors, Inc., to provide a new car for the defendant. In accordance with this situation a representative of the Bethel Motors, Inc., went to Detroit to purchase the car and defendant, on November 12, 1937, wired him (exhibit 3) to add certain other accessories, which were not originally thought of.

At the time the agreement was entered into to purchase a new car there certainly was new value given as of that time and the fact that delivery of the car was not affected until February, through no fault of the defendant, does not change its situation. In any event, the statute also provides that a buyer

in the ordinary course of trade includes one who takes under a pre-existing mercantile contract with the trustee to buy the goods delivered, or like goods, for cash or on credit.

Surely at this time there was a pre-existing contract for the delivery of a new car to the defendant.

The claim that the full price was not paid for the car is without foundation, for in fact cash in the amount of $1,040.61, as evidenced by checks (exhibits 2 and 5) was turned over to the Bethel Motors, Inc.

I am of the opinion that the defendant has shown sufficient facts to bring him within the section of the statute in question and that the plaintiff has failed to sustain the burden of proof.

Judgment may be entered for the defendant.